# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL FEDERATION OF THE BLIND OF TEXAS, INC., a Texas Nonprofit Corporation, | § § § § | |
| INSTITUTE FOR DISABILITY ACCESS, INC., a/k/a ADAPT OF TEXAS, INC., a Texas Nonprofit Corporation, | § § § § § | |
| Plaintiffs; | § § | |
| v. | § § | NO. 3:09-CV-1567-F |
| GREG ABBOTT as he is Attorney General of the State of Texas, | § § § | |
| Defendant. | § § | |

## ORDER GRANTING IN PART AND DENYING IN PART DISPOSITIVE MOTIONS FOR SUMMARY JUDGMENT

BEFORE THE COURT are dispositive motions for summary judgment filed by Defendant Greg Abbott ("Texas) and by Plaintiffs, National Federation of the Blind of Texas, Inc. and Institute for Disability Access, Inc. (Docket Nos. 11 and 14). Also before the Court are Plaintiffs' Motion for Emergency Injunctive Relief and Thereafter a Preliminary Injunction (Docket No. 5); Texas Association of Goodwills' ("TAG") Amicus Brief; TAG's Supplemental Amicus Brief;[1] and Texas's Response and Objection to TAG's Supplemental Amicus Brief. The Court held a hearing on this matter on November 3, 2009. After careful consideration of the law, the parties' submissions, and

---

[1] TAG's Motion for Leave to File Supplemental Amicus Brief is GRANTED (Resolves Docket No. 24).

1

the oral arguments, the Court GRANTS IN PART AND DENIES IN PART Texas's

Motion for Summary Judgment and GRANTS IN PART AND DENIES IN PART

Plaintiffs' Motion for Summary Judgment.[2]   The Court's resolution of the cross-motions

for summary judgment resolves all issues in the case.   Accordingly, Plaintiffs' Motion for

Emergency Injunctive Relief and Thereafter a Preliminary Injunction is DENIED AS

MOOT.[3]

## I.    FACTUAL BACKGROUND

This action concerns a recently enacted Texas Statute codified at Tex.

Bus. & Comm. Code §§ 17.921-17.926 (the "Act"), entitled "An Act relating to

regulating the collection or solicitation of donated goods subsequently sold by for-profit

entities or individuals." Acts 2009, 81st Leg., ch. 1368, § 1.   The Act requires for-profit

entities that solicit and resell donations on behalf of charitable organizations,

"professional resellers," to make certain disclosures when they collect clothing or other

household goods through public receptacles, or through telephonic, mail, or in-person

solicitations.   *See generally* Tex. Bus. & Comm. Code §§ 17.922-17.924.   These

disclosures apply in three situations.   The "no-charitable-organization disclosure

sections," §§ 17.922(b), 17.923(b), 17.924(b), require professional resellers to disclose if

no money will go to a charitable organization.   The "percentage disclosure sections,"

§§ 17.922(c), 17.923(c), 17.924(c), require professional resellers who pay a percentage of

the proceeds from the sale of donated items to disclose the percentage that will be paid to

_____

[2] (Resolves Docket Nos. 11 and 14).
[3] (Resolves Docket No. 5).

2

the charitable organization. Finally, the "flat fee disclosure sections," §§ 17.922(d), 17.923(d), 17.924(d), require professional resellers who pay a charitable organization a flat fee for use of the charitable organization's name to disclose the flat fee that will be paid to the charitable organization.

The parties filed a Joint Stipulation of Facts (Docket No. 10). Plaintiffs are charitable organizations that engage in activities regulated by the Act. Joint Stipulation of Facts ¶ 1. Specifically, Plaintiffs are charitable organizations who retain professional resellers to assist their mission. The professional resellers are retained to solicit donations of clothing or other household goods through donation bins referred to as "receptacles," as well as through telephone appeals. *Id.* ¶¶ 2-3. Plaintiffs are paid a flat fee based on volume. *Id.* ¶ 4. At the November 3, 2009 hearing, Plaintiffs explained that the flat fee by volume is a payment based on the size of donations, not the number of items donated—donations are placed in a bin, and when the bin is full, the flat fee payment for that bin is due. Plaintiffs' Complaint alleges that the Act violates the First and Fourteenth Amendments of the United States Constitution because it: (1) is a content-based restriction of protected speech; (2) violates equal protection; (3) is underinclusive; (4) is overly broad; and (5) is a prior restraint of protected speech. The Complaint also alleges that the Act violates Article I, Section 8 of the Texas Constitution. Plaintiffs argue that the three Supreme Court cases dealing with the regulation of charitable solicitations, *Village of Schaumburg v. Citizens for a Better Env't.*,[4] *Secretary*

//

---

[4] 444 U.S. 620 (1980).

*of State of Md. v. Joseph H. Munson Co.,*[5] and *Riley v. National Federation of the Blind*

*of North Carolina, Inc.,*[6] require that this Court declare the Act unconstitutional.

In response to Plaintiffs' constitutional claims, Texas argues that the Act is not an unconstitutional restriction on protected free speech. Texas urges the Court to find that the speech regulated by the Act is commercial speech entitled only to intermediate scrutiny. Texas also argues that to the extent strict scrutiny applies, the statute is narrowly tailored. Finally, Texas explains that Plaintiffs' Equal Protection claims are based on their First Amendment claims and do not require the Court to strike any portion of the Act that survives the Court's First Amendment analysis. Both parties now move for summary judgment. In addition to moving for summary judgment, Texas challenges this Court's jurisdiction to hear Plaintiffs' state constitutional claim and argues that Plaintiffs do not have standing to challenge certain portions of the statute.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c), *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986). To support its motion for summary judgment, the moving party bears the "burden of showing the absence of a genuine issue of material fact, and for these purposes the material it lodge[s] must be viewed in the light most favorable to the

---

[5] 467 U.S. 947 (1984).
[6] 487 U.S. 781 (1988).

opposing party." *Adickes v. S.H. Kress & Co.*, 389 U.S. 144, 157 (1970). To grant a motion for summary judgment, the Court must determine that, viewing the record in the light most favorable to the nonmovant, the moving party is nevertheless entitled to judgment as a matter of law. Here, the parties have stipulated to all relevant facts.

## III.   JURISDICTION OVER STATE CONSTITUTIONAL CLAIM

Texas asserts Eleventh Amendment immunity with regard to Plaintiffs' state constitutional claim. *See Pennhurst State Sch. & Hosp. v. Halderman*, 469 U.S. 89, 100 (1984) ("[I]n absence of consent[,] a [federal] suit in which the State or one of its agencies or departments is named as a defendant is proscribed by the Eleventh Amendment."). Plaintiffs identify a case where the Fifth Circuit heard state constitutional arguments. *See Woodall v. City of El Paso*, 49 F.3d 1120 (5th Cir. 1995). But *Woodall* is inapplicable here. *Woodall* involved a city government that was not entitled to the same Eleventh Amendment protections as a state government. *Cf. Bd. of Trustees of University of Alabama v. Garett*, 531 U.S. 356, 369 (2001) (discussing federal abrogation of Eleventh Amendment immunity and observing that "the Eleventh Amendment does not extend its immunity to units of local government"). Additionally, in *Woodall*, El Paso consented to federal jurisdiction over the state constitutional claim— the case was filed in state court and El Paso removed it to federal court. 49 F.3d at 1122. Texas is not a "local government" and has not consented to federal jurisdiction, so *Woodall* is unpersuasive. The Court does not have jurisdiction over the state constitutional claim because Texas is entitled to Eleventh Amendment Immunity.

//

5

## IV. STANDING

Texas disputes Plaintiffs' standing to challenge the Act with respect to the "no-charitable-organization disclosure sections" and the "percentage disclosure sections." Plaintiffs are paid a flat fee by professional resellers based on volume. Joint Stipulation of Facts ¶ 4. The "flat fee disclosure sections" require professional resellers who solicit donations while paying charitable organizations a flat fee to disclose the fee paid to the charitable organization if the solicitation is done through a receptacle, by phone, by mail, or in-person. Tex. Bus. & Comm. Code §§ 17.922(d), 17.923(d), 17.924(d). Texas does not challenge Plaintiffs' standing to this portion of the statute.[7] But the Act also requires similar disclosures for the same solicitation where the charitable organization receives a percentage of goods sold or where the charitable organization receives nothing at all. *Id.* §§ 17.922(b)-(c), 17.923(b)-(c), 17.924(b)-(c). Plaintiffs have not offered any evidence to show that they intend to hire professional resellers to engage in activity covered by these sections of the Act. Texas argues that the sections are severable, so that Plaintiffs do not have standing to challenge these sections. Plaintiffs argue that the sections are not severable, and that even if Plaintiffs do not have standing to challenge the sections that do

//

---

[7] TAG, in its Supplemental Amicus Brief, argues that Plaintiffs do not have standing to challenge any portion of the Act because the Act only regulates professional resellers. As Texas correctly explains in its Response and Objection to TAG's Supplemental Amicus Brief, this argument is incorrect. The Act does regulate Plaintiffs, as it prevents Plaintiffs from engaging in fundraising activities that they currently engaged in—soliciting funds through professional resellers. Thus, Plaintiffs do suffer an injury that is "concrete and particularized," connected to the Act, and redressible by a favorable ruling. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (outlining the constitutional requirements for standing).

not pertain to a flat fee, the relaxed standing requirements in First Amendment cases permit the case to go forward.

Standing is an absolute constitutional minimum that the Court must examine when necessary, even if not raised by the parties. *See, e.g., Juidice v. Vail*, 430 U.S. 327, 331 (1977) (examining standing sua sponte). The Article III standing requirement requires a plaintiff to satisfy three elements: (1) suffering an "injury in fact" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical;" (2) showing a "causal connection between the injury and the conduct complained of;" and (3) demonstrating a likelihood that "the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and quotations omitted). Although Plaintiffs do retain professional resellers who pay Plaintiffs a flat fee by volume, Plaintiffs have not hired nor do they intend to hire professional resellers who would pay them nothing or pay them a percentage of the proceeds for the resell of the donated items. To bring a facial challenge to a statute, a plaintiff must normally demonstrate that the statute would be invalid in every single circumstance. *Wash. State Grange v. Wash State Republican Party*, 128 S.Ct. 1184, 1190 (2008).

But the normally strict requirements for a plaintiff to bring a facial challenge are relaxed in certain First Amendment cases. The Supreme Court allows First Amendment challenges to broadly worded statutes whose "very existence . . . may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected." *Members of City Council of Los Angeles*

7

*v. Taxpayers for Vincent*, 466 U.S. 789, 798 (1984). Although the standing requirements for a facial challenge are relaxed in this case, Plaintiffs are not permitted to challenge any sections within the Act that they would not ordinarily have standing to challenge if these sections are severable from the portions of the Act that they do have standing to challenge. *See Brazos Valley Coal. for Life, Inc. v. City of Bryan, Tex.* 421 F.3d 314, 323 (5th Cir. 2005) (refusing to grant prudential standing to First Amendment plaintiffs to challenge severable portions of a statute).

The determination of whether a provision of a state statute is severable is a question of state law, *Virginia v. Hicks*, 539 U.S. 113, 121 (2003), but a district court may have no role in rewriting an improper regulatory scheme. *See Randall v. Sorrell*, 548 U.S. 230, 262 (2006) (refusing to sever a provision that would require the Court to rewrite the statute). The Act has no severability clause. *See generally* Tex. Bus. & Comm. Code §§ 17.921-17.926. The Texas Government Code explains that statutes without severability clauses are still severable if other portions of that statute are still able to be given effect. Tex. Govt. Code § 311.032(c). As the Texas Supreme Court articulated: "[T]he distribution into sections is purely artificial . . . . If, when the unconstitutional portion is stricken out, that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must stand." *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 844 (Tex. 1990).

Here, two disclosure requirements are at issue with regard to Plaintiffs' standing: (1) the "percentage disclosure sections," and (2) the "no-charitable-organization

disclosure sections." The parties have stipulated that Plaintiffs are paid a flat fee based on volume. Joint Stipulation of Facts ¶ 4. The amount paid to a charitable organization under a flat fee arrangement could approximate the amount paid to a charity under a percentage of the proceeds arrangement. If the donations in particular locations tend to be of higher value, one would expect the flat fee paid per bin to increase.[8] Similarly, if a particular area generated donations that were of little or no value to the professional reseller, one would expect the flat fee paid for each bin to decline. Because the effect of these two agreements are so similar, there would be a large gap in the statutory scheme if one type of agreement were forced to make unfavorable disclosures, while the other was not. In this case, were the Court to find the "flat fee disclosure sections" unconstitutional without addressing the "percentage disclosure sections," one would expect all contracts that would be subject to the "percentage disclosure sections" to be altered so as to be covered by the now unconstitutional "flat fee disclosure sections." Accordingly, this Court cannot sever the flat fee provision from the percentage disclosure requirement, as it would create a large hole in the regulatory structure. *Cf. Randall v. Sorrell*, 548 U.S. 230, 262 (2006) (refusing to sever provisions of a statute that would "leave gaping loopholes").

In contrast to the "gaping loophole" that would occur if the "flat fee disclosure sections" and the "percentage disclosure sections" were severed from each other, the

---

[8] The First Amendment presumes "that speakers, not the government, know best . . . what they want to say and how to say it." *Riley*, 487 U.S. at 790-91. Thus the Court presumes that charitable organizations are fully capable of negotiating fair agreements with professional resellers that pay a flat fee by volume—including the ability to negotiate for better rates per bin of donations in areas where the donations tend to be of greater value.

requirement that a professional reseller must disclose that no money is going to a charitable organization does not appear to impact the regulatory policy of disclosing the amount of money that is actually going to a charitable organization. Plaintiffs are charitable organizations who receive funding from professional resellers that are hired to solicit donations. Plaintiffs do not enter into relationships in which they receive no money from the professional resellers who successfully solicit donations. At the hearing, Plaintiffs conceded that the disclosure requirement for professional resellers who give no money to a charitable organization is not a concern of Plaintiffs. Because this disclosure requirement is severable from the remainder of the Statute, the Court finds that Plaintiffs have standing to challenge Tex. Bus. & Comm. Code §§ 17.922(c)-(d), 17.923(c)-(d), 17.924(c)-(d), but do not have standing to challenge Tex. Bus. & Comm. Code §§ 17.922(b), 17.923(b), 17.924(b). Therefore, the Court does not address the constitutionality of the provisions requiring disclosure of the fact that no money is being given to a charitable organization. *Id.* §§ 17.922(b), 17.923(b), 17.924(b).

## V. CONSTITUTIONALITY OF THE ACT

Plaintiffs remaining claims are that the Act (1) is an unconstitutional restriction on protected speech; (2) deprives Plaintiffs of equal protection of the laws; (3) is under-inclusive; (4) is overly broad; and (5) is an unconstitutional prior restraint on free speech.

### A. First Amendment Strict Scrutiny Analysis

A content-based restriction on protected speech is subject to strict scrutiny. *E.g. United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 813 (2000); *Sable Commc'n of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989). Compelled silence, in the First

Amendment context, is the same as compelled speech. *Riley*, 487 U.S. at 797; *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 256 (1978). Thus, it is indisputable that the Act's disclosure requirements are content-based restrictions because they compel the speaker—the professional resellers—to engage in speech that they would not otherwise engage in. Content based regulations are subject to strict scrutiny only if the statute regulates protected speech, but not if it regulates economic speech. *Riley*, 487 U.S. at 788. If strict scrutiny does indeed apply, the Act can only be constitutional if it is narrowly tailored to a compelling state interest. *See, e.g., Pleasant Grave City, Utah v. Summum*, 129 S.Ct. 1125, 1132 (2009) (explaining that strict scrutiny is satisfied only if a restriction on speech is "narrowly tailored to serve a compelling government interest") (citing *Cornelius v. NAACP Legal Def. and Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985)).

### 1. The Act Regulates Protected Speech

The key issue in determining whether the Act is a constitutional regulation of speech is the Court's determination of whether the solicitations by the professional resellers constitute commercial speech. Texas argues that the present case is distinguishable from the *Riley/Munson/Schaumburg* trilogy of cases relating to charitable solicitations because the professional resellers are not directly soliciting donations for charitable organizations. Rather, the Act only regulates professional resellers who solicit donations for themselves in the name of a charitable organization. Plaintiffs assert that the present matter is not constitutionally distinguishable from the previous cases. In their view, a professional fundraiser who solicits cash donations for the charitable organization

//

11

is engaging in protected speech to the same extent as a professional reseller who solicits

donations of clothing and household goods for a charitable organization.

At the hearing, Texas expanded upon its argument that the Act regulated only

commercial speech. Texas explained that the solicitations in *Riley* were protected

because of a balancing test—that the less protected commercial speech was too closely

intertwined with protected speech. Texas argues that the link between the persuasive

speech and protected speech is much more attenuated here—a professional fundraiser

regulated by the Act collects donations in the name of a charitable organization, resells

the donations, and gives the charitable organization a flat fee based on volume or a

percentage of the proceeds. Texas urges that these transactions are almost entirely

commercial in nature. Finally, Texas argues that even if in-person, mail, and phone

solicitations covered by Sections 17.923 and 17.924 are regulations of protected speech,

Section 17.922, which covers receptacle solicitations, should be exempted from strict

scrutiny as no prior precedent has dealt with charitable solicitations through receptacles.

The Court agrees that there is, in effect, a balancing test used to determine if

speech is protected, but respectfully disagrees as to what is balanced. The mere

solicitation of funds is commercial speech and may be regulated by state legislatures,

even if the beneficiary or solicitor is a charitable organization. *See Schaumburg*, 444

U.S. at 632 ("[S]oliciting financial support is subject to reasonable regulation."). Statutes

regulating charitable solicitations regulate protected speech to the extent that the statutes

regulate "solicitation[s] characteristically intertwined with informative and perhaps

persuasive speech seeking support for particular causes or for particular views on

economic, political, or social issues." *Id.* The Supreme Court is unwilling to "separate the component parts of charitable solicitations from the fully protected whole." *Riley*, 487 U.S. at 796. Thus, it is the character of speech by charitable organizations—not a charitable organization's status as a charitable organization—that renders charitable solicitations protected speech. The fact that a professional solicitor is making the charitable solicitation on behalf of a charitable organization does not cause the solicitations to be any less "intertwined" with protected speech. *See generally Riley*, 487 U.S. 781; *Munson*, 467 U.S. 947. In fact, the Supreme Court has indicated that commercial entities may enjoy the same protections as charitable organizations if they are engaged in the same type of speech as charitable organizations. *See Munson*, 467 U.S. at 955 n.6 (explaining that the Munson Corporation's own First Amendment rights existed but were not addressed because they were not pursued on appeal to the Supreme Court); *cf. also Citizens United v. Fed. Election Comm'n*, No. 08-205, slip op. at 31 (U.S. Jan. 21, 2010) ("[T]he First Amendment does not allow political speech restrictions based on a speaker's corporate identity.").

Just as solicitations for money may be intertwined with protected speech, so too may solicitations for clothing or household goods. And just as "small or unpopular charities" must usually hire professional solicitors and pay these solicitors higher fees than larger charitable organizations would, *see Riley*, 487 U.S. at 793, 799, "small or unpopular charities" who hire solicitors to solicit donations of clothing and household good may also need to hire resellers to dispose of donated goods. In the Court's view, it is irrelevant—from a First Amendment perspective—what is ultimately done with

13

donated goods. *Cf. Schaumburg*, 444 U.S. at 632 (protecting solicitations because of the speech associated with the solicitations, not the destination of the donated money). The speech that renders the entire transaction protected speech or merely commercial speech is complete when the solicitation is complete. The fact that the professional reseller regulated by the Act solicits the donations and then turns around and sells them does not render the professional reseller's solicitations on behalf of the charitable organization any less "intertwined" with protected speech.

The Court is equally unpersuaded by Texas's attempt to exempt receptacles from strict scrutiny. The Supreme Court has found speech to be protected when it is "informative . . . [or] persuasive speech seeking support for particular causes or . . . views." *Schaumburg*, 444 U.S. at 632. It is quite possible that many, if not most, receptacles in existence do not include any "informative" or "persuasive" speech that could be considered protected speech under the First Amendment. But there is nothing preventing the inclusion of protected language on a receptacle, and nothing in the Act that exempts receptacles with protected speech from the disclosure requirements. Accordingly, the Court finds that Tex. Bus. & Comm. Code §§ 17.922(c)-(d), 17.923(c)-(d), 17.924(c)-(d) regulate protected speech.

## 2. The Act Serves a Compelling State Interest

Texas asserts that the Act serves a compelling state interest, protecting charities and the public from fraud. Plaintiffs do not dispute that these are compelling interests,[9]

---

[9] Plaintiffs object to Texas's interest in protecting charitable organizations from fraud to the extent it is a paternalistic attempt to ensure charitable organizations do not enter into

but argue that the Act is not narrowly tailored. The Court finds that protecting the public

from fraud is a compelling interest and that the Act serves this interest.

### 3. The Act is not Narrowly Tailored

Texas argues that the Act is narrowly tailored because it only regulates a particular

class of donations that the Texas Legislature found to be particularly susceptible to fraud

and because it only requires the disclosure of the actual amount given to a charitable

organization, not the average amount given to charitable organizations in the past year as

required in *Riley*, a number that was not necessarily related to the costs of any particular

solicitation. *See Riley*, 487 U.S. at 800 n.12 (explaining that North Carolina's disclosure

requirement was "curious" as it only required disclosure of information relating to past

solicitations which could be cheaper or more expensive than present solicitations).

Plaintiffs argue that the Act is not narrowly tailored and is in fact structured to benefit

large charitable organizations at the expense of smaller charitable organizations.

As discussed above, in the context of protected speech, the First Amendment

prohibits the government from compelling speech to the same extent that the government

is prohibited from silencing speech it does not like. *Riley*, 487 U.S. at 797; *see also*

*Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 256 (1978) (finding that states may not

---

unfavorable arrangements. The Plaintiffs are correct that the First Amendment requires
the Court to "presume that speakers, not the government, know best . . . what they want
to say and how to say it." *Riley*, 487 U.S. at 790-91. But the Court does not find this
concern applicable here, because the Court interprets Texas's interest in protecting
charitable organizations from fraud to be an interest in protecting charitable organizations
who do not receive the donations that are, in the Texas Legislature's view, fraudulently
solicited by the professional resellers, not an interest in protecting the charitable
organizations who hire the professional resellers.

compel newspapers to grant a right of reply to critical pieces); *Wooley v. Maynard*, 430

U.S. 705, 714 (1977) (preventing states from compelling citizens to display the state

slogan on license plates where the state slogan supports a political view contrary to that

of the citizen). The *Riley* Court observed that the disclosure requirements would "almost

certainly hamper legitimate" fundraising by professionals on behalf of charitable

organizations. *Riley*, 487 U.S. at 799.   Of particular concern was the fact that the

disclosure requirements would discriminate against "small or unpopular charities" which

must use professionals out of necessity, while larger charitable organizations could

absorb the costs internally to avoid the disclosure requirements. *Id.*

The *Riley* Court articulated more narrowly tailored measures that could replace the

disclosure rule. A state could require the professional solicitors to file financial reports

about fundraising costs and publish these filings. *Id.* at 800.   A state could also

"vigorously enforce" state fraud laws. *Id.* Finally, a state could put the public on notice

that costs were associated with the solicitation that went to a for-profit entity by requiring

the solicitors to disclose their identity and status as professional solicitors. *See id.* at 799

n.11 ("[N]othing in this opinion should be taken to suggest that [a] [s]tate may not require

a fundraiser to disclose unambiguously his or her professional status. On the contrary,

such a narrowly tailored requirement would withstand First Amendment scrutiny.").

The Act requires professional resellers to make several disclosures.   Section

17.922, which covers solicitations made through public receptacles, requires that:

> (a)   A for-profit entity or individual may not use a public donations
> receptacle to collect donated clothing or household goods and

16

subsequently sell the donated items unless the for-profit entity or individual attaches to the receptacle a notice that:

. . .

    (3)    contains the business address, other than a post office box number, and telephone number of the for-profit entity or individual;

. . .

    (c)    If any of the proceeds from the sale of the donated items will be given to a charitable organization, the disclosure required by Subsection (a)(4) must state: "DONATIONS ARE TO (NAME OF FOR-PROFIT ENTITY OR INDIVIDUAL) AND WILL BE SOLD FOR PROFIT. ____ PERCENT (INSERT PERCENTAGE) OF ALL PROCEEDS WILL BE DONATED TO (NAME OF CHARITABLE ORGANIZATION)."

    (d)    If the for-profit entity or individual pays to a charitable organization a flat fee that is not contingent on the proceeds generated from the sale of the donated items and the for-profit entity or individual retains a percentage of the proceeds from the sale, the disclosure required by Subsection (a)(4) must state: "THIS DONATION RECEPTACLE IS OPERATED BY (NAME OF FOR-PROFIT ENTITY OR INDIVIDUAL) ON BEHALF OF (NAME OF CHARITABLE ORGANIZATION). Donations are sold for profit by (name of for-profit entity or individual) and a flat fee of (insert amount) is paid to (name of charitable organization)."

Tex. Bus. & Com. Code § 17.922(a)(3), (c), (d). Sections 17.923 and 17.924 cover solicitations by phone, in-person, or by mail. These sections do not have the Section 17.922(a)(3) requirement that the name and address be stated. But these portions of the Act do have analogues to Section 17.922(c) and (d). When a percentage of the sale goes to the named charitable organization, the phone, in-person, or mail solicitation must include a statement that: "'DONATIONS TO (NAME OF FOR-PROFIT ENTITY OR INDIVIDUAL) WILL BE SOLD FOR PROFIT AND ___ PERCENT (INSERT

17

PERCENTAGE) OF ALL PROCEEDS WILL BE DONATED TO (NAME OF CHARITABLE ORGANIZATION).'" Tex. Bus. & Com. Code. §§ 17.923(c), 17.924(c). When the charitable organization receives a flat fee instead, the phone, in-person, or mail solicitation must include a statement that "'SOLICITATIONS FOR DONATIONS ARE MADE BY (NAME OF FOR-PROFIT ENTITY OR INDIVIDUAL) ON BEHALF OF (NAME OF CHARITABLE ORGANIZATION). Donations will be sold for profit by (name of for-profit entity or individual) and a flat fee of (insert amount is paid to (name of charitable organization).'" *Id.* §§ 17.923(d), 17.924(d).

As discussed above, the Supreme Court observed in dicta that requiring a professional to "unambiguously disclose his or her professional status" was a narrowly tailored requirement. *Riley*, 487 U.S. at 799 n.11. The requirement that the professional resellers disclose the percentage of funds raised is not a narrowly tailored requirement, however, because it compels speech beyond identifying the identity and status of the professional reseller. The disclosure of the professional reseller's status serves to put the potential donor on "notice that at least a portion of the . . . [contribution] will be retained." *Id.*, 487 U.S. at 798. There are other, more narrowly tailored means for Texas to achieve its goal of fraud prevention as discussed in *Riley* and above. The Court finds that the portions of the Act that require the disclosure of the percent of the proceeds or flat fee that go to the charitable organization are not narrowly tailored. *See* Tex. Bus. & Com. Code §§ 17.922(c)-(d), 17.923(c)-(d), 17.924(c)-(d). However, the remaining disclosure provisions that require the professional resellers to identify their name, status

//

18

as a for-profit entity, or the fact that the donated items will be resold for profit are

narrowly tailored under a First Amendment strict scrutiny analysis. *See id.*

## B.      Equal Protection and Underinclusivity Claims

Plaintiffs assert that the Act is unconstitutionally underinclusive and that this underinclusivity violates Plaintiffs' Fourteenth Amendment right to Equal Protection under the law.  Plaintiffs object to several types of solicitations that are exempt from the Act: (1) solicitations via a medium not covered, be it by e-mail, television, pamphlet, or billboard; (2) solicitations for a type of donation not covered, such as for cars or for money; (3) the fact that the disclosure requirements do not apply to charitable organizations who conduct fundraising in-house; and (4) the fact that the disclosure requirements apply to charitable organizations that are listed as a tax-exempt organization under the Internal Revenue Code Section 501(c), but allegedly does not apply to organizations that forego IRS tax-exempt status while still registering as Texas nonprofit corporations.

### 1.      Applicability to Only Certain Types of Solicitations

Briefs and exhibits by Texas and TAG explain the background for the Act. Members of the Texas Legislature became aware that for-profit companies were making solicitations for clothing and household goods in the name of specific charitable organizations or with the implication that the donations would benefit charitable organizations.  When money actually went to a charitable organization, the amount going to the charitable organization was, from the legislature's perspective, too small.  The Act was passed to ensure that donors knew when a for-profit entity was involved in the sale

19

of goods and knew precisely how much the specified charitable organization, if any, benefited from donations.

Plaintiffs' claim that the Act is unconstitutionally underinclusive because it does not apply to e-mail, billboard, television, and pamphlet solicitations fails. The First Amendment underinclusivity doctrine is based on the need to prevent the government from "attempt[ing] to give one side of a debatable public question an advantage in expressing its views to the people." *City of Ladue v. Gilleo*, 512 U.S. 43, 51 (1994). There does not appear to be any attempt by the legislature to favor solicitors of clothing and household goods that use e-mail, billboards, television or pamphlets to conduct their solicitation activities. Rather, this omission appears to have occurred because the legislature did not anticipate that clothing and household goods would be solicited except by the methods listed in the Act. *See generally* Texas Br. Supp. Mot. Summ. J. (describing the background of the Act).

Were the statute "patently underinclusive," the Court would be forced to strike the Act for being an exaggerated legislative response that is not narrowly tailored to Texas's purported compelling interest. *See, e.g., Mann v. Smith*, 796, F.2d 79, 82 (5th Cir. 1986) (finding a prison ban on newspapers and magazines in order to prevent fires and clogging of toilets to be "patently underinclusive" as inmates had ready access to books and toilet paper). Here, the Act does not appear to be "patently underinclusive." In fact, it is not clear that it is underinclusive at all. Because clothing and household goods must be physically transferred, it is quite difficult to imagine how a solicitation for clothing or household goods could occur without ultimately also involving an additional solicitation

20

that was regulated by the Act. Accordingly, the Court finds the Act constitutional in this respect.

### 2. Applicability to Only Certain Types of Solicited Items

Plaintiffs object that the Act does not comprehensively cover all types of donations. The State of Texas is not required to "choose between attacking every aspect of a problem or not attacking it at all." *Danridge v. Williams*, 397 U.S. 471, 487 (1970). The Court finds the Act constitutional in this respect. Texas chose to prevent a particular type of fraudulent solicitation and is not required to regulate all possible fraud in a single statute.

### 3. Inapplicability to In-House Solicitations

Plaintiffs object to the applicability of the Act to professional resellers, but not to charitable organizations that solicit and resell donations in-house. The requirement that the professional reseller disclose its identity and status as a professional reseller is, as discussed in above subpart V(A), a narrowly tailored approach that Texas may use to put its citizens on notice that for-profit entities are involved and that the solicitation may incur costs. The provisions do not apply to the charitable organizations raising funds in-house as there are no professional resellers for these charitable organizations to identify.

There is only one disclosure requirement that was found constitutional in subpart V(A) that is now found unconstitutional here: the requirement that the professional reseller's disclosure include a statement that the donations will be sold "for profit." Tex. Bus. & Com. Code §§ 17.922(c)-(d), 17.923(c)-(d), 17.924(c)-(d). Although the requirement by itself is narrowly tailored, the Act's implementation of the disclosure

requirement is unconstitutionally underinclusive. In describing the types of charitable organizations who conduct in-house solicitations for clothing and household goods, Texas explains that many of these organizations employ people to refurbish the donations and that the charitable organization will then subsequently resell the donations. Although charitable organizations are not for-profit entities, they are certainly selling the donations for and at a profit. As passed, the Act's disclosure requirements are unconstitutionally underinclusive because they discriminate against charitable organizations who hire professional resellers to solicit and sell donations in favor of charitable organizations who conduct the solicitation and resale in-house. Texas is constitutionally permitted to put its citizens on notice that the clothing and household goods donated are going to be resold instead of being reused or donated. But if Texas chooses to do so, it must require all organizations engaging in this resale activity to inform the public of this fact, not just some of these organizations.

### 4. The Definition of Charitable Organizations

The Act defines a "charitable organization" to be "an organization that is exempt from federal income tax under Section 501(a) of the Internal Revenue Code of 1986 by being listed as an exempt organization in Section 501(c) of that code." Tex. Bus. & Com. Code § 17.921(1). Because Sections 17.922(c)-(d), 17.923(c)-(d), 17.924(c)-(d) apply to "charitable organizations," Plaintiffs object that charitable organizations who forego tax-exempt status are exempt from the disclosure requirements, while Texas argues that it is highly unlikely that the organizations described by Plaintiffs exist. Although Texas may be correct, Plaintiffs have a more fundamental problem with this argument—they lack

standing. Texas did not raise this issue, but as discussed in Part IV above, standing is an absolute constitutional minimum that must be examined by the Court sua sponte if necessary.

Both Plaintiffs and Texas appear to misinterpret the Act. The organizations that Plaintiffs argue are exempt are in fact covered by the Act in the "no-charitable-organization disclosure sections." *See* Tex. Bus. & Comm. Code. §§ 17.922(b), 17.923(b), 17.924(b). These sections apply whenever professional resellers solicit donations for anyone that does not meet the Act's definition of a "charitable organization." *See id.* (all stating that the disclosure must be made by professional resellers "[i]f none of the proceeds from the sale of the donated items will be given to a *charitable organization*") (emphasis added). The disclosures required by the no-charitable-disclosure sections are harsher than those required by the "flat fee disclosure sections" and the "percentage disclosure sections." *Compare, e.g.*, Tex. Bus. & Comm. Code § 17.922(b) (requiring the disclosure to state that donations are not for a charitable organization, which implies that no charitable purpose will be advanced by the donation) *with id.* § 17.922(c) (requiring the disclosure to state the percentage that will be given to a charitable organization, which implies that the donations will advance, at least in part, a charitable purpose).

As discussed above in Part IV, standing requires the plaintiff to suffer an injury. *See Lujan*, 504 U.S. at 560 (listing an injury as the first of three requirements to establish standing). The definition of charitable organizations only harms entities which are covered by the "no-charitable-organization disclosure sections," sections which Plaintiffs

do not have standing to challenge. Accordingly, the Court rejects Plaintiffs' complaint regarding the definition of "charitable organizations" for lack of standing.[10]

## VI.   CONCLUSION

Plaintiffs pursued six claims in this Court. For the reasons stated above, the Court finds that severable portions of the Act are (1) unconstitutional content-based restrictions of free speech; (2) unconstitutional violations of equal protection; (3) unconstitutionally underinclusive; (4) unconstitutionally overbroad; and (5) unconstitutional prior restraints of protected speech. The Court does not have jurisdiction to address Plaintiffs' sixth claim, whether the Act violates Article I, Section 8 of the Texas Constitution.

The Act regulates in-person, telephonic, and mail solicitations by professional resellers on behalf of charitable organizations. *See generally* Tex. Bus. & Comm. Code §§ 17.923, 17.924. The Act also regulates solicitations placed on receptacles that serve as donation bins. *See generally id.* § 17.922. Plaintiffs have standing to challenge the requirement that a professional reseller must disclose: (1) the identity of the professional reseller; (2) the fact that the donated items would be sold "for profit;" (3) the percentage of the proceeds of the donations that will go to the charitable organization, if applicable; and (4) the flat fee that would go to the charitable organization, if applicable. *See id.* §§ 17.922(a)(3), 17.922(c)-(d), 17.923(c)-(d), 17.924(c)-(d). For the reasons stated above, the Court finds constitutional the requirements that professional resellers

---

[10] Nothing in this Order should be construed as expressing an opinion by the Court, one way or the other, on the merits of a potential constitutional challenge to the Act by a Texas nonprofit organization that is not considered a charitable organization by the statute.

identify themselves. But the challenged sections are unconstitutional with regard to the requirements that the professional resellers disclose the amount of money going to a charitable organization—whether a flat fee or percentage of the proceeds—and the disclosure of the fact that donated items will be sold "for profit."

Section 17.922(a)(3) is thus constitutional, as it only requires the disclosure of the contact information for any professional reseller. Only part of the disclosure in Section 17.922(c) is constitutional, the portion that reads: "DONATIONS ARE TO (NAME OF FOR-PROFIT ENTITY OR INDIVIDUAL)." *Id.* § 17.922(c). The Court strikes the remainder of the disclosure as unconstitutional: "AND WILL BE SOLD FOR PROFIT. ___ PERCENT (INSERT PERCENTAGE OF ALL PROCEEDS WILL BE DONATED TO (NAME OF CHARITABLE ORGANIZATION.)" *Id.* Similarly, the only disclosure requirement that is constitutional in Section 17.922(d) is the portion that reads: "THIS DONATION RECEPTACLE IS OPERATED BY (NAME OF FOR-PROFIT ENTITY OR INDIVIDUAL) ON BEHALF OF (NAME OF CHARITABLE ORGANIZATION)." *Id.* § 17.922(d). The Court strikes the rest of the required disclosure as unconstitutional: "Donations are sold for profit by (name of for-profit entity or individual) and a flat fee of (insert amount) is paid to (name of charitable organization)." *Id.*

Sections 17.923 and 17.924 have identical disclosure requirements. *See generally id.* §§ 17.923, 17.924. The only portion of the compelled disclosures in subsection (c) of these two sections that is constitutional is the portion that requires professional resellers to state: "DONATIONS TO (NAME OF FOR-PROFIT ENTITY OR INDIVIDUAL)." *Id.* §§ 17.923(c), 17.924(c). The Court strikes the remainder of the compelled disclosure

in these two subsections, "WILL BE SOLD FOR PROFIT AND ___ PERCENT (INSERT PERCENTAGE) OF ALL PROCEEDS WILL BE DONATED TO (NAME OF CHARITABLE ORGANIZATION)," *id.*, as unconstitutional. The only portion of the compelled disclosures in subsection (d) of these two sections that is constitutional is the portion that requires professional resellers to state that "SOLICITATIONS FOR DONATIONS ARE MADE BY (NAME OF FOR-PROFIT ENTITY OR INDIVIDUAL) ON BEHALF OF (NAME OF CHARITABLE ORGANIZATION)." *Id.* §§ 17.923(d), 17.924(d). The remaining portions of the compelled disclosures in these two subsections, "Donations will be sold for profit by (name of for-profit entity or individual) and a flat fee of (insert amount) is paid to (name of charitable organization)," *id.*, are struck as unconstitutional.

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART Texas's Motion for Summary Judgment, GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion for Summary Judgment, and DENIES AS MOOT Plaintiffs' Motion for Emergency Injunctive Relief and Thereafter a Preliminary Injunction.[11]

//

//

//

//

//

//

---

[11] (Resolves Docket Nos. 5, 11, and 14).

As a final note, the Court observes that the legal work by both sides in this case has been exemplary.   The lawyers representing the parties have met the highest professional standards and are hereby congratulated for their stellar performances.

Signed this _1st_ day of _February_ , 2010.

Royal Furgeson
Senior United States District Judge

27